UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DJANCO IDRISSA,

Petitioner,

v.

MATTHEW PUTRA et al.,

Respondents.

Case No. 1:26-cv-2531

Honorable Jane M. Beckering

/

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**Discussion**

**I. Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.7.)

In an order entered on September 17, 2026, the Court directed Respondents to show cause why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 4.) Respondents filed their response on October 1, 2026. (ECF No. 8.) Petitioner

filed a response to the order to show cause on September 28, 2026, (ECF No. 7), and a reply to Respondents' response on October 9, 2026, (ECF No. 10.)

## II. Relevant Factual Background

Petitioner is a native and citizen of Guinea-Bissau. (Pet., ECF No. 1, PageID.8.) Petitioner entered the United States without inspection on or about July 4, 2000. (Notice to Appear (NTA), ECF No. 8-2, PageID.47.) On January 3, 2001, the Department of Homeland Security (DHS) issued Petitioner a Form I-862, NTA, under the name Madou Kabba, charging him with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA). (*Id.*; 2026 Form I-213, ECF No. 8-3, PageID.54.) The NTA alleged that Petitioner was a native and citizen of Sierra Leone. (NTA, ECF No. 8-2, PageID.47.) On January 14, 2002, Petitioner was ordered removed to Sierra Leone, and the removal order became final when the Board of Immigration Appeals (BIA) dismissed Petitioner's appeal on August 26, 2003. (2026 Form I-213, ECF No. 8-3, PageID.54; Order of the Immigration Judge (IJ), ECF No. 8-4, PageID.63.) Petitioner was subject to an order of supervision (OSUP). (*See* 2026 Form I-213, ECF No. 8-3, PageID.54.)

On July 10, 2025, Petitioner reported to the ICE Detroit Field Office pursuant to his OSUP. (*Id.*) Respondents assert that Petitioner claimed for the first time that his real name was Djanco Idrissa, and Petitioner provided an expired passport indicating his name is Djanco Idrissa and he is a citizen of Guinea-Bissau. (*Id.*; Cook Decl. ¶ 9, ECF No. 8-1, PageID.43–44; Passport, ECF No. 8-4, PageID.67.) ICE Enforcement and Removal Operations (ERO) then told Petitioner to make arrangements with the Guinea-Bissau embassy to depart the United States to Guinea-Bissau. (Resp., ECF No. 8, PageID.33; Cook Decl. ¶ 9, ECF No. 8-1, PageID.44.)

On February 3, 2026, Petitioner reported to the ICE Detroit Field Office for another appointment pursuant to his OSUP. (Cook Decl. ¶ 10, ECF No. 8-1, PageID.44.) ICE ERO officers asked Petitioner if he had begun to make travel arrangements, and Petitioner said that he had only

"talked to relatives overseas." (*Id.*) On February 3, 2026, Petitioner's OSUP was revoked and Petitioner was detained by ICE ERO. (*Id.*; Notice of Revocation of Release, ECF No. 8-3, PageID.50.) On February 19, 2026, DHS filed a motion to reopen proceedings in the BIA, "charging [Petitioner] under his true name and true country of citizenship, Guinea-Bissau." (Resp., ECF No. 8, PageID.33; Mot. to Reopen Proceedings, ECF No. 8-4, PageID.58.) The motion remains pending. *See* Automated Case Information, https://acis.eoir.justice.gov/en/ (enter 078-668-089 for the A-Number, select "Sierra Leone" for the Nationality, and select Submit) (last visited Oct. 14, 2026) (hereinafter "Automated Case Information").

On April 28, 2026, Petitioner filed his first petition for a writ of habeas corpus in *Djanco v. Raycraft* (*Djanco I*), No. 1:26-cv-1381 (W.D. Mich.). In *Djanco I*, the Court conditionally granted Petitioner's habeas petition pursuant to 28 U.S.C. § 2241, ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or, in the alternative, immediately release Petitioner from custody. Op. & J., *Djanco I*, (W.D. Mich. May 8, 2026), (ECF Nos. 6, 7). On May 15, 2026, Petitioner had a bond hearing where the IJ denied bond because:

> The [Petitioner] has a final order of removal. His appeal was denied by the BIA. While the [Petitioner] has a pending motion to reopen before the BIA he continues to have a removal order at this point in time. The court finds that the [Petitioner] is a flight risk and no bond can mitigate this risk.

(Order of the IJ, ECF No. 1-1, PageID.14.) Respondents now state that they mistakenly identified § 1225(b)(2), rather than § 1231, as the proper detention authority for Petitioner in *Djanco I*. (Resp., ECF No. 8, PageID.34.)

"On May 11, 2026, ICE ERO conducted a 90 Day Post Order Custody Review and served [Petitioner] a continue detention letter" that found Petitioner was a flight risk based on Petitioner's "deception of his identity, that he has had a final order of removal for over 20 years, and that he

has taken limited steps to assist ICE in effectuating his removal." (Cook Decl. ¶ 12, ECF No. 8-1, PageID.44.) On July 27, 2026, ICE ERO issued a "180 Day Continue Detention Letter" stating: "ICE has sufficient documentation proving Guinea-Bissau citizenship and is confident that a document will be issued for your removal from the United States. Therefore, you are to remain in ICE custody at this time." (Decision to Continue Detention, ECF No. 1-1, PageID.15.) On September 2, 2026, Petitioner claimed fear of returning to Guinea-Bissau. (Cook Decl. ¶ 14, ECF No. 8-1, PageID.44.)

**III. Habeas Corpus Legal Standard**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

**IV. Merits Discussion**

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Pet., ECF No. 1, PageID.7; Resp., ECF No. 8, PageID.34.) However, Petitioner contends that his detention is unlawful and violates § 1231 and the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.7–8.) In response, Respondents argue that Petitioner's continued detention under § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). (*See* Resp., ECF No. 8, PageID.35–37.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final on August 26, 2003, and the 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[1] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

In this case, when Petitioner initiated this action on September 8, 2026, he had been in ICE custody for more than seven months. Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists because ICE ERO has not been able to effectuate Petitioner's removal since 2003. (Pet., ECF No. 1, PageID.7–8.) In response, Respondents assert:

---

[1] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

> [A]fter being informed by Petitioner of his real identity and country of citizenship, ICE ERO began the process of removing Petitioner to Guinea-Bissau by (1) instructing Petitioner to begin making arrangements with the Guinea-Bissau Embassy to depart the United States and return to his home country; and (2) filing a motion to reopen Petitioner's immigration proceedings with the BIA to charge him under his true name and true country of citizenship.

(Resp., ECF No. 8, PageID.36–37.) Respondents contend that "the only barrier to removal is the Petitioner himself as he falsified his identity and country of citizenship, which resulted in him being originally ordered removed to Sierra Leone." (*Id*., PageID.37.) Further, Respondents state that Petitioner is solely responsible for delays because he "has taken minimal steps to assist ICE ERO in effectuating his removal to Guinea-Bissau." (*Id*.) In reply, Petitioner states that he did not falsify his name, he has repeatedly told Respondents that his name is not Madou Kabba, and his removal is not reasonably foreseeable because ICE ERO has not made any travel arrangements. (Reply, ECF No. 10, PageID.73–74.)

Although Respondents have filed a motion with the BIA to reopen Petitioner's immigration proceedings, that motion remains pending and thus Petitioner remains subject to a final order of removal to Sierra Leone, not Guinea-Bissau. *See* Automated Case Information. Under these circumstances, the Court concludes that Petitioner has shown that there is "good reason" to believe that "there is no significant likelihood of removal in the reasonably foreseeable future" because Respondents have been unable to get travel documents from Guinea-Bissau for more than seven months. *Zadvydas*, 533 U.S. at 701. Because Petitioner has met his burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.* Respondents' evidence is that ICE ERO instructed Petitioner to begin making travel arrangements with the Guinea-Bissau embassy, and Respondents filed a motion to reopen Petitioner's immigration proceedings under his true name and country of citizenship, Guinea-Bissau. However, Respondents instructed Petitioner to make travel arrangements in July 2025, before Petitioner was taken into ICE custody in February 2026.

Since then, Respondents do not indicate that they have submitted a travel document request to Guinea-Bissau. There is nothing in the record before the Court to indicate that Respondents have taken any further action to effect the removal of Petitioner after filing the February 19, 2026 motion to reopen BIA proceedings. Moreover, it appears Respondents cannot take any further action to effect Petitioner's removal to Guinea-Bissau before his credible fear claim is adjudicated. (*See* Cook Decl. ¶ 14, ECF No. 8-1, PageID.44 (stating that in September 2, 2026, Petitioner claimed fear of returning to Guinea-Bissau)). Under these circumstances, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court, therefore, will grant Petitioner's § 2241 petition.

## V. Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VI. Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of the other named Respondents. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025). To ensure that this Court's orders regarding release will bind at least one Respondent with authority to act in the event that Petitioner is transferred outside

the area under the authority of the ICE Detroit Field Office, the Court will retain all of the remaining Respondents.

## Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject to any conditions of release that existed prior to Petitioner's present detention, within five days of the date of the Court's opinion and corresponding judgment. The Court will also order Respondents to file a status report within six days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment.

Dated: October 15, 2026

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge